### BENJAMIN MOORE & CO. v. AUWELL.

(Circuit Court, E. D. New York. July 30, 1909.)

1. TRADE-MARKS AND TRADE-NAMES (§§ 59, 70*)—INFRINGEMENT—UNFAIR COMPETITION.

The use by a defendant of the name "Murafresco" for a wall finish was not an infringement of complainant's trade-name "Muresco" for a similar product, nor did it constitute unfair competition, where it appeared that a number of very similar names were used in the trade for wall coverings, and that there was no imitation of complainant's packages or labels, or attempt to deceive purchasers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. §§ 59, 70.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. On final hearing.

See, also, 158 Fed. 462.

Clifton V. Edwards (Jacob H. Shaffer, of counsel), for complainant.

Edward C. Davidson (Phillips Abbott, of counsel), for defendant.

CHATFIELD, District Judge. The complainant corporation is a house of established reputation in the business of manufacturing and selling paints, painters' supplies, wall finishes, kalsomines, etc. The firm was in business in New York City prior to the year 1892, and in August of that year made the first sales shown in the record of a certain dry powder, composed of whiting, glue, and Irish moss, to be mixed with hot water and applied as a finish for interior walls and ceilings. The corporation has used the word "Muresco" from the year 1892 as the particular name of this wall finish. The introduction of the product was so successful that it seems to have attained the greatest sale of any one article of the kind in the United States. In the year 1895 or 1896 one of the selling agents of Benjamin Moore & Co. suggested the use of an anchor as a background or device with which to make a design of the word "Muresco," and this suggestion was followed out. On the 30th of August, 1898, Benjamin Moore &

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Co. registered a trade-mark, on a application filed July 18, 1898, of the following design:

—in connection with certain language descriptive of the wall finish or kalsomine, and on June 25, 1907, they registered a trade-mark of similar design, but without limiting it to the wall finish, for use upon "dry and mixed paints and pigment colors," and in the statement accompanying the declaration it is said that the trade-mark had been continuously used since December 18, 1892. Upon the 2d of June, 1908, on an application filed February 10, 1908, and after this action had been started, the said Benjamin Moore & Co. registered a trademark of the word "Muresco," declaring that it had been continually used since December 18, 1892, and was appropriated to a dry powder used for a nonwashable wall finish.

It appears from the testimony that the word "Muresco," as used by Benjamin Moore & Co., was the trade-name of this wall covering, and that its use was so general and well known as to furnish a nickname or adjective defining or identifying the entire list of products of Benjamin Moore & Co. as those of the corporation which sold the powder Muresco. After the union of the anchor and the word as a means of advertising as well as identification, all products of Benjamin Moore & Co. bore the design; but in all of such use it is apparent that the word "Muresco" was intended to convey and did convey the idea of connection between the manufacturers of the article bearing the device and the wall covering, Muresco, rather than to apply the word "Muresco" itself to oil paints and colors as a descriptive word for that purpose. We therefore have the situation of a trade design, and eventually a trade-mark, based upon the reputation and advertising qualities of a particular product.

The defendant, Auwell, was for many years a salesman of Benjamin Moore & Co. His literature, when acting as such salesman, made note of the fact that he was agent for Benjamin Moore & Co.'s Mu-

resco, and he seems to have built up a considerable trade in the city of New York prior to 1907, at which time he left the complainant's employment because of certain personal differences. At that time he owed the complainant corporation a considerable sum of money in the same way in which he had had a running account of good size for a long period. This account would have been, and apparently was, paid in the ordinary course of business, and there is nothing to indicate that the mere existence of the debt had any effect upon the issues in this case.

It also appears that the defendant knew of the business of the Muralo Company, a corporation located on Staten Island, which since about 1895 had built up a large trade in kalsomine and wall products, and which not only had upon the market and extensively sold the product called "Muralo," but also made for different dealers similar and even identical varieties of wall coverings for like use, under a number of names, such as "Calcimo," "Muralo," "Muralkote," "Refresco," "Aquaresco," "Muralene," "Muraltint," "Muralo Fresco," "Decoresco," "Tinteresco," etc. At the time of the taking of the testimony the total output of the Muralo Company seems to have been larger than that of any competitor, and competition between the Muralo Company and Benjamin Moore & Co. has been keen.

The defendant also knew of one John J. Moran, who, individually and for the corporations of John J. Moran, Incorporated, and the Pyramid Paint Company, had during the years 1903 to 1906 sold a product manufactured by the Muralo Company, and called "Murafresco," which word was formed from the name of the product "Muralo Fresco" then in use. This product is made principally of whiting, glue, and Irish moss, in proportions not made known in the testimony, and must, in many ways, resemble the complainant's product Muresco as well as Muralo and other of the products of the Muralo Company. Conflicting testimony is given as to the amount of the sales and the success of certain efforts made by the complainant company to locate Mr. Moran, especially during the time when he was in business as the Pyramid Paint Company, at 116 Nassau street, New York. It would seem that Mr. Moran had some business matters which interfered with his success in the selling of Murafresco, and at the time that the defendant left the employment of Benjamin Moore & Co. Moran was in such a position that he was ready to negotiate with Auwell, and as a result of which negotiations the defendant made a contract with the Muralo Company by which they made for him, and have since that time furnished, the product Murafresco, previously sold by Moran, with which the defendant, Auwell, has successfully and to a considerable extent entered into competition with the complainant's Muresco.

The testimony shows that Auwell has gone to his old customers, and in a number of instances has succeeded in selling them Murafresco, and that he has deliberately endeavored to supplant Muresco with his own product. The testimony also shows that there is a difference of opinion as to whether Muresco or Murafresco is the better for the purpose designated, there being some apparent difference in

their properties, although the question has not been gone into, nor is it material to this issue. The complainant has endeavored to show that in some instances the defendant has billed Murafresco to purchasers who thought they were purchasing Muresco; but it would seem that no intentional deception on the part of the defendant has been proven. On the contrary, he has endeavored to obtain the sale of his own product in the place of Muresco, and the complainant must rest its entire case upon the similarity of the products, the purpose for which they are used, and the names under which they are sold.

The question of trade-mark does not control. Similar words, as applied to wall covering, have been used before the earliest application for any trade-mark, and the design of the trade-mark is not in any way copied, unless by the mere likeness of the two words. The word "Muresco" may be admitted to be a material and substantial part of each trade-mark; but the trade-mark cannot be held infringed if the elements of unfair use of the trade-name be not present. The word "Muralo," contained in the name of the Muralo Company, and applied to the same sort of products, is made up of the stem of the Latin "murus," meaning a wall; and the same three letters appear, not only in the words in question, but in many of the other products of the Muralo Company which have been above recited. The termination "sco," being merely a Latin attribute, conveys no further meaning than the termination "lo," while the terminations "fresco," "tint," etc., are of themselves words, and slightly more definite in their identification of the products than the suffix "sco" itself.

It will be seen, therefore, that aside from the use of the word and the similarity of sound the complainant does not make out any case of unfair competition, and we must look further in order to determine whether the defendant was knowingly attempting to deceive those purchasers, and to injure the complainant by such deception, solely through labeling his product in such a way as would be likely to cause mistake and confusion in the minds of those attempting to purchase such a product, in instances where either their own lack of care or of definite information on their part might allow the sale of the defendant's goods to customers who supposed that they were obtaining the product known to them as "Muresco."

The testimony does not show that the word "Murafresco" has been so generally used since the year 1903 as by itself to imply acquiescence on the part of the complainant, nor laches in attempting to prevent its use, except in the general way that the various products made or sold by the Muralo Company all seem to have been openly sold, and to be the result of a direct desire to compete with Muresco, and in the way in which all of these names are more or less derived from the same stems, and bear some resemblance to each other. Various witnesses have testified that the trade generally are careful to observe the distinction of an exact name in getting the product which they wish, and the narrow field which seems to have been made use of in coining such names would indicate both the need of care, discrimination, and carefulness in purchasing, if the tradesman or consumer desires to make use of one material rather than another. The evidence certainly

shows that Murafresco is not such a poor substitute as of itself to import an attempt at deception, and Mr. Auwell had more right to take up the sale of a product already upon the market than to coin the name Murafresco itself; for the entire transaction is capable of a different explanation than would be the case if he had left the employment of the complainant and immediately entered into competition by the use of a word resembling as near as he dared make it the complainant's trade-name for the same product.

In the case of Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149, reversing Id. (C. C.) 149 Fed. 783, a somewhat similar situation existed, in that the defendants were putting upon the market locks of similar design, under the name "Yap," which were alleged to be an imitation of the well-known "Yale" lock, and intended to mislead and deceive persons desiring to purchase the Yale lock. Decision at circuit was rendered for the defendants, but was reversed on the ground that the word "Yap" and the resemblance in appearance of the locks could have had no basis and no purpose could have dictated their choice except the intent to make use of the resemblance to the Yale lock, and to profit by the benefits to be derived from the deception of unconscious or unwitting purchasers.

If the defendant, Auwell, had coined the word "Murafresco" for the sole purpose of putting upon the market a similar product with a name which would be confused with "Muresco," the cases would be much alike; but where a number of such names are already existent in the trade, and where all of them are applicable in their etymology to the narrow kind of use to which the substance so called can be applied, and inasmuch as no question can be made in this suit of the right of the defendant to properly and legitimately push his wares in competition with complainant's products, it would seem that the mere slight resemblance of the words is not of itself conclusive upon the question.

It further appears from the testimony that a certain product called "Duresco," and also known as "Onresco," but made in England, has been sold to a considerable extent in this country, and has been advertised since the Centennial in Philadelphia in 1876. The product Duresco is a paste, or semiliquid material, rather than a powder, and is advertised to be "washable," apparently conveying the meaning that it is capable of more or less cleaning or washing without destruction, while the products Muresco and Murafresco are said to be "washable" in the sense of being capable of removal by washing. But since 1895 Duresco has been sold for mixture with water as an interior kalsomine or wall covering, and soon after that date the words "Duresco" and "Muresco" were registered in the United States Patent Office by another agent of the English corporation, who declared that the words had been used since 1895, ignoring at least the sales by the former agent previous to that time. It is satisfactorily established, however, that the word "Duresco" was more or less known to the trade throughout this entire period, and the witnesses in this case all agree that "Duresco" is even closer in sound and appearance to the word "Muresco" than is the word "Murafresco" now in question. The accent up-

on the word "Murafresco" changes the sound more than the insertion of the letters "afr" change the appearance of the written word; but the entire testimony only serves to emphasize the fact that all of these wall products of the same nature have been called by more or less similar terms. The word "Muresco" has not been the sole occupant of the field, and the case is thus far distinct from the Yale Lock Company Case just cited.

The important element of intention to deceive cannot be necessarily inferred in the present instance, as it has been in the many cases where injunctions have been granted, such as American Grocery Co. v. Sloan (C. C.) 68 Fed. 539, in which "Momaja" is held to have infringed "Mojava," and Welsbach Light Co. v. Adam (C. C.) 107 Fed. 463, in which the word "U-C-A" was held to infringe the word "Yusea," and Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, in which the word "Hunyadi" was held to have become common property, but the defendants were shown to have imitated the packages and labels of the complainant, with the addition of indistinct or immaterial changes, and an injunction was granted against such acts.

In the present case the labels, barrel heads, etc., of the defendant are printed in red, whereas those of the complainant have always been printed in blue. The witness Moran, who first used the word "Murafresco," also used blue ink, and his labels might with more force have been objected to from their similarity of appearance. But the change of color is of itself a substantial change in the appearance of the label, and the various differences shown seem to be sufficient to relieve the defendant of the charge of intended deception, while the narrow field of nomenclature and the accepted usages of the trade seem to justify his employment of the word "Murafresco," even in competition with the product called "Muresco." The mere addition or omission of the anchor shown in the complainant's trade-mark is conclusive neither way, and, as has been said, the case is rather one of the right of the complainant to prevent imitation of the name of its product, rather than a strict determination upon the trade-mark finally registered by him. The taking out of a second trade-mark registration of the word itself has not altered the issue created by the pleadings, which were framed before the application for this second registration was filed.

The defendant may have a decree dismissing the bill of complaint.